[L.A. No. 30823. July 19, 1978.]

PALOS VERDES FACULTY ASSOCIATION et al.,
Plaintiffs and Respondents, v.
PALOS VERDES PENINSULA UNIFIED SCHOOL DISTRICT et al.,
Defendants and Appellants.

652

**654**

COUNSEL

John H. Larson, County Counsel, and Audrey Oliver, Deputy County Counsel, for Defendants and Appellants.

William E. Brown, Gerald A. Conradi and Brown & Conradi as Amici Curiae on behalf of Defendants and Appellants.

Trygstad & Odell, Lawrence B. Trygstad and Richard J. Schwab for Plaintiffs and Respondents.

OPINION

MANUEL, J.— Defendants Palos Verdes Peninsula Unified School District (District) et al., appeal from a judgment ordering the issuance of a peremptory writ of mandate directing them to place John Christenson, a certificated teacher employed by District, on a step of its salary schedule commensurate with his years of teaching experience in both public and private schools, and to pay certain elements of back compensation.

Plaintiff Christenson was hired by District on or about September 17, 1968. At that time his prior teaching experience consisted of one year in the public schools and five years at an accredited private secondary school, but according to then applicable District rules relating to the rating-in of certificated employees credit was to be given only for service in the *public* schools; accordingly, he was given only one year's credit. On or about November 17, 1969, however, the applicable rating-in rule was amended to provide credit for service in *any* properly accredited elementary or secondary school, whether public or private. Plaintiff subsequently requested that he be placed on the salary schedule in the class and step commensurate to his teaching experience under the new rule, and to be awarded appropriate back pay. When this request was rejected he, in 1975, sought a writ of mandate in the superior court.

The court ordered issuance of the writ, holding in substance that former Education Code section 13506, as amended effective July 1, 1970,[1]

___

[1]Under the reorganized Education Code, operative April 30, 1977, former Education Code section 13506 is now designated section 45028. For purposes of convenience we shall use the earlier designation in this opinion.

required that plaintiff be placed on the salary schedule as requested. On the matter of back pay the court held that plaintiff's claim was barred by laches for school years prior to 1973-1974, but that appropriate adjustments should be awarded for all subsequent years. District et al., appeal from the judgment.

The sole issue on this appeal is whether the provision relied upon by the trial court requires the result reached by it. We hold that it does. We affirm the judgment.

## I

Prior to its amendment in 1969, section 13506 of the Education Code provided in relevant part as follows: "In cities, teachers of beginners shall be ranked in the salary schedule with the highest salaried teachers in the elementary grades of equal training and experience. [¶]Uniform allowance *may* be made in any schedule of salaries for years of training and years of service." (Italics added.)[2] This language, it was held, while "enjoin[ing] on [boards of education], within reasonable limits, the principle of uniformity of treatment as to salary for those performing like services with like experience . . . does not prevent the Board from making reasonable classifications" (*Fry* v. *Board of Education* (1941) 17 Cal.2d 753, 757-758 [112 P.2d 229]), and such classifications were to be upheld unless they were "arbitrary, discriminatory or unreasonable." (*Rible* v. *Hughes* (1944) 24 Cal.2d 437, 444 [150 P.2d 455, 154 A.L.R. 137]; see also, *Fry, supra,* at p. 758; *Kacsur* v. *Board of Trustees* (1941) 18 Cal.2d 586, 592 [116 P.2d 593]; *Aebli* v. *Board of Education* (1944) 62 Cal.App.2d 706, 754 [145 P.2d 601]; *San Diego Federation of Teachers* v. *Board of Education* (1963) 216 Cal.App.2d 758, 762 [31 Cal.Rptr. 146]; *Lawe* v. *El Monte School Dist.* (1968) 267 Cal.App.2d 20, 22 [72 Cal.Rptr. 554]; *Eastham* v. *Santa Clara Elementary Sch. Dist.* (1969) 270 Cal.App.2d 807, 810 [76 Cal.Rptr. 198]; *Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d 534, 541 [81 Cal.Rptr. 112]; *Sayre* v. *Board of Trustees* (1970) 9 Cal.App.3d 488, 491 [88 Cal.Rptr. 355].)

Of the cited cases, two are of particular interest with reference to the matter we now consider. In the leading case of *Fry* v. *Board of Education,*

[2]The statutory predecessors of section 13506 contained substantially the same language beginning in 1923. (See Ed. Code (1943) § 13805 (Stats. 1943, ch. 71, p. 577); Sch. Code (1929) § 5.734; Pol. Code, § 1687, as amended Stats. 1923, ch. 278, § 1, p. 583, and Stats. 1927, ch. 556, § 1, p. 941.)

*supra,* 17 Cal.2d 753, two teachers were appointed at a time when existing rules and regulations of the school board provided for an advanced rating based upon years of prior out-of-county teaching experience. They were immediately granted leaves of absence for one school year, and while they were absent the board revised its rules to preclude "incoming teachers" from receiving credit for out-of-county teaching experience. When the board sought to apply the new rules to the subject teachers—but not to four other teachers who had been hired at the same time but had taken up their teaching duties immediately upon hiring—they sought and were granted a writ of mandate ordering that they be classified for pay purposes under the prior rules and be awarded back pay.

We affirmed. After stating the principle set forth above concerning the propriety of "reasonable classifications," our opinion went on as follows: "There can be no doubt that the Board may reasonably classify between teachers with teaching experience in San Francisco and those with teaching experience outside. There can be no doubt that the resolution [adopting the new rule precluding credit for out-of-county experience] was well within the power of the Board insofar as it provided that as to all incoming teachers no credit for outside experience should be granted. It might also be conceded that the Board could, by proper action, classify as between teachers employed, but on leave of absence, and teachers employed and actually teaching. It may be that the Board could have lawfully classified the four teachers who had actually taught in San Francisco prior to [the effective date of the resolution], in one group, and could lawfully have placed the plaintiffs, who were similarly employed but who were on leaves of absence, in another group. But as already pointed out, the point is that the Board did not do this." (17 Cal.2d at p. 758.) Concluding that the two plaintiffs were not "incoming teachers" within the meaning of the resolution adopting the new rule, we held that that rule could not be applied to them.

However strongly worded it may have been, the language above quoted relative to the kinds of classifications permissible under the law was plainly not essential to our decision in *Fry,* and for this reason was to be regarded as obiter dictum. It remained for the case of *Lawe* v. *El Monte School Dist.* (1968) *supra,* 267 Cal.App.2d 20—decided more than 27 years later—to apply the *Fry* principles in a dispositive fashion. There the plaintiff, a permanent certified teacher, had been employed by the district for five consecutive years when he was granted a one year leave of absence to enable him to teach in an American Dependants Education Group School in Germany for the United States Department of Defense.

Apparently during the period of his absence the district adopted a policy of allowing salary credit for outside experience only for the purpose of advancing a teacher as high as the fourth step in the salary scale, a step which Lawe had already achieved prior to his leave of absence. Thus while two other teachers who had not reached the fourth step prior to taking leaves of absence for outside teaching were granted credit for the time thus spent, plaintiff was not. His application for mandate was denied by the superior court, and he appealed.

The Court of Appeal affirmed. After setting forth the principle of "reasonable classification" articulated in *Fry* and later cases interpreting section 13506, the court went on: "It is within the province of the governing board of a school district to determine the extent to which credit is to be given for teaching experience outside the district (see *Fry* v. *Board of Education* . . .) and a court is not free to interfere with such determination if the policy is reasonable in nature and is applied fairly and without discrimination. [Citations.] [¶] In the present case there was no abuse of discretion on the part of the governing board of the school district in not permitting the use of approved outside experience as a basis for advancement to a step higher than the fourth step. Such a limitation tended to stabilize the continuity of service within the district of experienced teachers and tended to confine the resort to outside teaching experience to those less experienced teachers who had more to gain thereby. Moreover, the prospect of credit for such outside experience could serve as a means of attracting teachers new in the profession to the El Monte School District. The record shows that such policy was applied fairly and without discrimination." (267 Cal.App.2d at pp. 22-23.)

## II

With this background[3] in mind, we are brought to a consideration of the *post*-1969 version of section 13506, the interpretation of which is

[3]Although not an "experience credit" case such as *Fry* and *Lawe*, the case of *San Diego Federation of Teachers* v. *Board of Education, supra*, 216 Cal.App.2d 758 is also significant to our determination—for reasons which will be made to appear below. There the district, after notifying certain senior teachers that they would be paid for the following year in the highest existing salary classification (which included those with "a doctor's degree or equivalent training"), adopted a new salary schedule in which the highest classification was reserved for those with an "earned doctorate." The new penultimate classification, into which the subject teachers now fell, had a higher salary range than the former top class, but the new top rating drew an even higher salary. The Court of Appeal upheld the trial court's denial of mandate, noting that the new schedule had been adopted "as an incentive to improved teacher qualifications." (216 Cal.App.2d at p. 761.) "The obvious and expressed reason," the court held, "for requiring an 'earned doctorate' or 90 graduate

central to this appeal. As here relevant[4] the amended section omits the first two paragraphs of the former section—i.e., that paragraph dealing specifically with "teachers of beginners" and that providing that uniform salary allowance "may" be made for training and experience (see text preceding fn. 2, *ante*)—and substitutes in their place the following language: "Effective July 1, 1970, each person employed by a district in a position requiring certification qualifications except a person employed in a position requiring administrative or supervisory credentials, *shall be classified* on the salary schedule on the basis of uniform allowance for years of training and years of experience. Employees shall not be placed in different classifications on the schedule, nor paid different salaries solely on the basis of the respective grade levels in which such employees serve." (Italics added.)

The Legislature also provided, in section 3 of the amending act (not appearing in the text of the new Education Code section), a statement of its intent: "It is the intent of the Legislature in amending Section 13506 of the Education Code as provided in Section 1 of this act to establish *a uniform base salary schedule* in each school district. It is not the intent of the Legislature in this act to limit a school district governing board in developing *pay incentive programs.*" (Stats. 1969, ch. 1314, § 3, p. 2651.) (Italics added.)

In proceeding with the task of interpretation at hand we are aided by certain general principles of statutory construction. **(2)** As stated by this court in *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222 [110 Cal.Rptr. 144, 514 P.2d 1224], at page 230: "We begin with the fundamental rule that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 627].) In determining such intent '[t]he court turns first to the words themselves for the answer.' (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1], cert. den. 340 U.S. 879 [95 L.Ed. 639, 71 S.Ct. 117].) ▌ We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' (*In re Alpine* (1928) 203 Cal.

---

units as a prerequisite for the achievement of the [highest] salary bracket was to encourage teachers to supplement their academic training and thus to increase the caliber of the teaching staff. The action taken was not arbitrary, discriminatory, or unreasonable." (216 Cal.App.2d at p. 766.)

[4]The new section also added substitute teachers and teachers in junior college districts *to the previous list of those to whom its provisions were inapplicable.*

731, 737 [265 P. 947, 58 A.L.R. 1500]; see also *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33]; *Chavez* v. *Sargent* (1959) 52 Cal.2d 162, 203 [339 P.2d 801], disapproved on another ground in *Petri Cleaners, Inc.* v. *Automotive Employees, etc. Local No. 88,* 53 Cal.2d 455, 473-475 [2 Cal.Rptr. 470, 349 P.2d 76].) 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' (*Select Base Materials* v. *Board of Equal., supra,* 51 Cal.2d 640, 645); 'a construction making some words surplusage is to be avoided.' (*Watkins* v. *Real Estate Commissioner* (1960) 182 Cal.App.2d 397, 400 [6 Cal.Rptr. 191].) 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' (*Johnstone* v. *Richardson* (1951) 103 Cal.App.2d 41, 46 [229 P.2d 9]; see also *West Pico Furniture Co.* v. *Pacific Finance Loans* (1970) 2 Cal.3d 594, 608 [86 Cal.Rptr. 793, 469 P.2d 665].) ■ Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. (*Select Base Materials* v. *Board of Equal., supra,* 51 Cal.2d 640, 645; *Stafford* v. *L. A. etc. Retirement Board* (1954) 42 Cal.2d 795, 799 [270 P.2d 12].)"

■ In addition to these general precepts, a more specific principle is directly applicable when, as here, the Legislature undertakes to amend a statute which has been the subject of judicial construction. In such a case it is presumed that the Legislature was fully cognizant of such construction, and when substantial changes are made in the statutory language it is usually inferred that the lawmakers intended to alter the law in those particulars affected by such changes. (See *Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 231-233 [273 P.2d 5]; *People* v. *Perkins* (1951) 37 Cal.2d 62, 63-64 [230 P.2d 353]; *Whitley* v. *Superior Court* (1941) 18 Cal.2d 75, 78-79 [113 P.2d 449]; *Estate of Todd* (1941) 17 Cal.2d 270, 273-275 [107 P.2d 913]; *Prager* v. *Isreal* (1940) 15 Cal.2d 89, 94 [98 P.2d 729]; *Oakland Pav. Co.* v. *Whittell Realty Co.* (1921) 185 Cal. 113, 120 [195 P. 1058].) In the instant case we must therefore presume a full awareness on the part of the Legislature of the construction which had been placed by the courts on section 13506. This construction, as we have pointed out, was to the effect and purport that the permissive language found in the section ("Uniform allowance *may* be made . . . ") did not preclude the making of "reasonable classifications" among teachers in salary matters—which classifications were to be upheld unless "arbitrary, discriminatory or unreasonable." It would appear that the Legislature

remained content with this construction as applied by the courts for many years.

We think it significant, however, that in 1968, a scant five months before the introduction of Assembly Bill No. 2216 (which as adopted became the amended version of § 13506), the Court of Appeal decided the case of *Lawe* v. *El Monte School Dist., supra,* 267 Cal.App.2d 20, which we have discussed in some detail above. There, for the first time, an appellate court of this state applied the aforesaid construction to uphold as "reasonable" a classification by which a district, in apparent furtherance of its perceived employment needs, made the availability of credit for outside teaching experience contingent upon a teacher's seniority position within the system. It was at this point that the Legislature acted.

██ It is our view—in light of the express terms of the 1969 amendment to section 13506, the express statement of intention found in the operative legislation, and the decisional background above referred to—that a clear indication of legislative intent emerges. The statute no longer provides that "[u]niform allowance *may* be made in any schedule of salaries for years of training and for years of service." Nor does it remain silent on the matter of *classification* of teachers on the salary schedule—a matter which, as we have seen, remained subject to a judicially determined measure of "reasonableness" under former law. Rather it speaks directly to the matter, and in so doing imposes a mandatory requirement not only that such classification be made, but also that it shall proceed *on the basis of* a uniform training-experience allowance. Thus, as of its effective date the new statute provides "each person employed by a district in a position requiring certification qualifications . . . *shall be classified* on the salary schedule *on the basis of* uniform allowance for years of training and years of experience." (Italics added.) The intent of the Legislature in making this change, as expressed in section 3 of the operative legislation, is "to establish a uniform base salary schedule in each school district."[5] Considering these elements

[5]As indicated above, the Legislature also stated in section 3 that it was *not* its intent "to limit a school district governing board in developing pay incentive programs." (Stats. 1969, ch. 1314, § 3, p. 2651.) The meaning of this language is clear in light of the *San Diego Federation of Teachers* case, discussed in footnote 3, *ante.* The fact that a district, in order to improve the level of academic attainment of its staff, chooses to do so by setting up special salary categories for those undertaking advanced training can in no way be said to conflict with the principle of uniform classification according to "years of training and years of experience." By the same token no conflict would occur should a district decide

—i.e., the express change of language and the Legislature's own statement of intent—in the decisional context of the enactment, we must conclude that one of the lawmakers' aims in enacting the new section was to break away from past reliance on judicial assessments of "reasonableness" in the classification of teachers and establish a more certain standard of its own. Thus the new statute, as we read it, had the twofold purpose of (1) *requiring* that teachers be classified for salary purposes, and (2) establishing that such classification proceed *wholly* on a uniform basis of years of training and years of experience. ██ ██ One effect of this action was to eliminate the possibility of future results of the type exemplified by *Lawe,* by which a district, while granting a given maximum of credit for outside experience, makes such credit available on less than a uniform basis to all teachers.[6]

Just such a result, it would appear, was reached in the case of *Sayre* v. *Board of Trustees, supra,* 9 Cal.App.3d 488, which was filed seven days subsequent to the effective date of the amendment but was decided under the former section. There the teacher in question, when first employed by the district for the 1963-1964 school year, had had twelve years prior teaching experience, but at that time the maximum credit allowable under district rules was five years and he was accordingly placed on the sixth step of the salary schedule. In 1964, the district board, in order to aid in the recruitment of experienced teachers, changed the applicable rule to allow a maximum of nine years credit. This new rule, however, was not to be applicable to teachers employed prior to the 1964-1965 school year. Plaintiff, contending that the classification in question was "arbitrary, discriminatory and violative of Education Code section 13506," (9 Cal.App.3d at p. 490) sought mandate in the superior court; his petition was denied, and he appealed.

---

to subclassify its top "experience" classification in order to encourage the retention or recruitment of extremely experienced teachers.

[6]To be distinguished in this respect, we believe, is the matter of maximum credit itself. A rule providing for outside experience credit up to five years may indeed have the effect of "depriving" a teacher having six years outside experience of a year of credit. This, however, is a "uniform allowance . . . for . . . years of experience" within the meaning of section 13506, for under it all teachers receive credit for prior experience up to the stated maximum. In the situation exemplified in *Lawe,* on the other hand, a teacher is precluded from receiving credit for a year of outside experience within the allowed maximum solely due to his seniority within the system. This, in our view, does not provide a "uniform allowance . . . for . . . years of experience."

By the same token, we do not read the new statute to preclude a district from making reasonable determinations as to the level and quality of "training" or "experience" which is to qualify for a particular level of credit within its boundaries. Once a district has made such determinations, however, the new statute requires that the resultant standards be applied uniformly to all teachers in the district.

The Court of Appeal, noting that "[o]n first impression, one would be inclined to agree with appellant's contention . . ." (9 Cal.App.3d at p. 490), nevertheless affirmed the judgment. Addressing itself to the pre-1970 statute, applicable to the case before it, the court stated: "The obvious purpose of section 13506 is to prevent favoritism in school employment, without unduly hampering school boards in school administration. Thus, a reasonable classification of school teachers, brought about by *policy changes necessitated by employment needs,* is permissible. (*Fry* v. *Board of Education* . . . ; *Lawe* v. *El Monte School Dist.* . . .)" (*Id.,* at p. 491; italics added.) Concluding that such a classification was there involved, the court held that the board could not "be compelled to classify appellant upward on the salary schedule merely because a change in policy is beneficial to incoming school teachers." (*Id.*)

While we are satisfied that the *Sayre* case may represent a proper application of the pre-1970 version of section 13506 as construed in *Fry* and *Lawe,* it is our view, explained above, that the amended version of the statute will tolerate no similar application. We have concluded, in short, that under the amended version of the statute certified employees not occupying administrative or supervisory positions are to be classified for salary purposes strictly according to years of training and experience up to the applicable maximum (see fn. 6, *ante*)—and that the principle of "reasonable classification" may no longer be employed in justification of variations from such uniform treatment on the basis of considerations such as "stabiliz[ing] continuity of service," "attracting new teachers" (*Lawe, supra,* 267 Cal.App.2d at p. 23), or "policy changes necessitated by employment needs" (*Sayre, supra,* 9 Cal.App.3d at p. 491).

### III

In arriving at this conclusion we have carefully considered all of the arguments put forward by District in opposition to it.

District's fundamental position, as we understand it, is that the sole legislative purpose underlying the subject amendment was that of removing the factor of grade level as a basis for salary classification of elementary and secondary teachers. Prior to the amendment, it is pointed out, it was possible for a district to classify teachers having identical training and experience differently for salary purposes according to the grades they taught, the only protection in this respect being afforded to "teachers of beginners" employed "in cities," who were required to be

ranked uniformly with other *elementary* teachers of equal training and experience. The new amendment, District urges, removes this inequity, but it does nothing to affect the principle of "reasonable classification" developed in *Fry* and subsequent cases.

This interpretation, in our view, fails to give effect to all of the language of the amendment, in contravention of the principle, stated above, that "[i]f possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose" (*Select Base Materials* v. *Board of Equal., supra,* 51 Cal.2d 640, 645). The second sentence of the amendment, as we have pointed out, provides: "Employees shall not be placed in different classifications on the schedule, nor paid different salaries, solely on the basis of the respective grade levels in which such employees serve." If the only purpose of the amendment were that suggested by District, the addition of this sentence would have been sufficient to accomplish that purpose.

The dissenting opinion, as we understand it, adopts a position which differs somewhat from that of the District. It is there suggested that the former statute had a broad mandatory effect—barring grade-level discrimination and requiring training-experience classification—with respect to all *elementary* teachers, but that its effect with respect to other teachers was permissive, insuring only that if training-experience classifications were set up as to other than elementary teachers, they must be "uniform" but subject to "reasonable" variation in order to avoid "unrealistic, inequitable, even absurd, results." The new statute, we are told, simply extended the rule formerly applicable only to elementary teachers to all teachers, but thereby worked no change in the definition of "uniform" to be followed. Thus, the dissenting opinion concludes, "the 1969 amendment to section 13506 had no effect on prior judicial authority permitting 'reasonable' variations from strict 'uniformity' in training-experience classifications."

As indicated above, we agree that one purpose of the new section was to impose a mandatory requirement of training-experience classification for all teachers.[7] We do not agree, however that this was its only purpose,

---

[7] We confess some difficulty in understanding how the first sentence of the former section can be understood to have established a requirement of training-experience classification of all elementary teachers. The sentence as we read it says nothing of classification but only insures that "teachers of beginners"—which we must take to mean teachers at the lowest grade level—be ranked equally for salary purposes with "the highest salaried teachers in the elementary grades of equal training and experience."

for to so conclude would be to ignore both the decisional background of the amendments and their express use, for the first time, of strict language of *classification.* If the purpose suggested by the dissenting opinion were the only one to be served by the new section—and if we were to adopt in its entirety the minority's interpretation of the old section (see fn. 7, *ante)*—that purpose could have been adequately served by substituting the word "district" for the words "elementary grades" in the first sentence of the former section and substituting "shall" for "may" in the second sentence thereof. That the lawmakers went further—adopting strong language of *classification* in the context of a complete statutory over-haul—manifests more ambitious aims, especially in light of the background of judicial interpretation against which they spoke.

It is also suggested that the Legislature could not have intended that its amendment be construed to preclude future application of the "reasonable classification" principle of *Fry* and related cases because drastic results would ensue. If districts, in order to change their experience-credit policies in light of present recruitment needs, are required to rerate all teachers in the district under the new standard, it is argued that their flexibility in this area will be greatly hampered by the administrative and budgetary difficulties involved. Moreover, it is pointed out, the adoption of a rule allowing *decreased* experience credit could, under the proposed construction, require *reduced* salaries for existing employees.

We are of course aware of the principle, cited to us by District, that the language of a statute should not be given its literal meaning if to do so would result in absurd consequences which the Legislature could not have intended. (See *People* v. *Barksdale* (1972) 8 Cal.3d 320, 334 [105 Cal.Rptr. 1, 503 P.2d 257], and cases there cited.) We do not, however, consider that principle applicable to the instant case. The fact that a district wide rerating may now be a necessary concomitant to any district's change of its rules regarding experience credit is not in our view a consequence which may be termed "absurd" in light of the benefits to be gained by an equitable treatment of all district employees. The matter of reclassification "downward" in the event of a decision to adopt a reduced experience credit is not now before us, and we shall wait for an appropriate case to address the issues therein involved.[8]

Nothing is said of teachers who are neither "teachers of beginners" nor among the "highest salaried teachers."

[8]We note that the case of *Aebli* v. *Board of Education, supra,* 62 Cal.App.2d 706, 757-758, a case decided under the 1929 School Code (see fn. 2, *ante*), indicates that such a

District's final argument, as we understand it, is that because (a) the construction suggested will necessarily have a "retroactive effect," and because (b) such an effect must not be inferred in the absence of express statutory language so declaring (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 173 [18 Cal.Rptr. 369, 367 P.2d 865]), therefore (c) the subject construction cannot have been intended by the Legislature. Our difficulty with this syllogism lies in its major premise. ■ In short, we must confess our inability to understand how a statute requiring that following its effective date, all certificated employees are to be classified according to a uniform allowance for training and experience, can be said to have a "retroactive effect." It cannot be gainsaid, of course, that persons employed prior to the effective date of the statute[9] may be affected by future reclassification. No suggestion has been made, however, that such a reclassification will entitle an employee to an adjustment in salary for periods before the effective date of the statute. Clearly the amendment is purely prospective in effect.

## IV

■ It is clear from the foregoing that the judgment herein must be affirmed. The trial court properly concluded that section 13506 of the Education Code, as amended effective July 1, 1970, requires that plaintiff Christenson be classified for salary purposes in the class and step commensurate to his teaching experience under the new rule adopted by District in November of 1969, allowing credit for prior teaching experience in private as well as public schools. It also properly concluded that an appropriate award of back pay should be made. Its determination that such award should affect only those years including and following the 1973-1974 school year is not here challenged.

## V

Insofar as they are inconsistent herewith, the cases of *Lompoc Federation of Teachers* v. *Lompoc Unified Sch. Dist.* (1976) 58 Cal.App.3d

reclassification is invalid as in derogation of teachers' "security" and "seniority" rights. As indicated above, we express no present opinion in this matter.

[9]We reject as unfounded District's suggestion that the amended statute, in referring to "each person employed by a district," has reference only to persons who *enter into* an employment relationship with a district following the effective date of the amendment. The Legislature, had it wished to convey the latter meaning, would certainly have done so by appropriate language.

701 [130 Cal.Rptr. 70] and *California Sch. Employees Assn.* v. *Coachella Valley Unified Sch. Dist.* (1977) 65 Cal.App.3d 913 [135 Cal.Rptr. 630], are disapproved.

The judgment is affirmed.

Bird, C. J., Tobriner, J., Mosk, J., and Newman, J., concurred.

**RICHARDSON, J.**—I respectfully dissent. In my view, the maxims of legislative construction cited by the majority undermine, rather than support, its ultimate conclusions. The 1969 amendments to Education Code section 13506 (now § 45028), reasonably interpreted, do not overturn the well settled principles that the statutory requirement of "uniform" experience ratings is subject to "reasonable classification" (e.g., *Rible* v. *Hughes* (1944) 24 Cal.2d 437, 444 [150 P.2d 455, 154 A.L.R. 137]; *Fry* v. *Board of Education* (1941) 17 Cal.2d 753, 757-758 [112 P.2d 229]) and that a school district need not recompute the experience ratings of veteran teachers each time it applies a new experience-rating policy to incoming employees (*Sayre* v. *Board of Trustees* (1970) 9 Cal.App.3d 488, 496 [88 Cal.Rptr. 355]).

The majority reasons as follows: since the prior statutory language provided only that "[u]niform allowance *may* be made" for years of training and years of experience, "uniformity" was not mandatory, but only permissible; this, in turn, permitted the courts to construct a "reasonable classification" gloss over the statute. By changing the word "may" to "shall," the 1969 amendments imposed absolute uniformity in classification for the first time and thereby removed any basis for a "reasonable classification" doctrine.

The flaw in the argument lies in its first major premise. Even under *prior* law, "uniformity" was a mandatory feature of any training-experience classification system covered by the statute; the "reasonable classification" exception was imposed *despite* that fact. The 1969 amendments, while serving an important purpose which I will describe, therefore could not have had the effect urged by the majority.

As the majority properly observes, we begin any analysis of legislative change by assessing the prior law as judicially interpreted. Examination of former section 13506 is best accomplished by analyzing its component

parts. Thus, the lead sentence provided: "In cities, teachers of beginners shall be ranked in the salary schedule with the highest salaried teachers in the elementary grades of equal training and experience." This sentence, by its plain meaning, established the general principle that *elementary-*level teachers would not suffer salary discrimination solely because they taught the very lowest grades, but must be classified for salary purposes with other *elementary* teachers of equal experience and training.

Section 13506 next declared: "*Uniform* allowance *may* be made in *any* schedule of salaries for years of training and for years of service." (Italics added.) By its use of the word "may," this sentence *authorized* districts to set up salary classifications for *all* teachers based on differences in education and experience, but did not require them to do so. If, however, a district *chose* to establish such classifications, *they must be "uniform."* That both the "equal ranking" and "uniformity" provisions were mandatory is shown by the third sentence of the section, which prohibited the drawing of any teacher salary warrant in violation of the statutory directives.

The cases interpreting former section 13506 so construed the statute. Thus, in *Fry* v. *Board of Education, supra,* 17 Cal.2d 753, after noting a school board's general discretion to fix salaries, we said, "However, it must . . . be conceded that the legislature had *enjoined* on [school] . . . Boards, within reasonable limits, the principle of uniformity of treatment as to salary for those performing like services with like experience . . . . This *limitation,* however, does not prevent the Board from making reasonable classifications." (*Id.,* at pp. 757-758, italics added.)

We spoke even more clearly in *Rible* v. *Hughes, supra,* 24 Cal.2d 437, where we observed, "Although it would appear that, as [plaintiff] . . . asserts, section 5.734 of the School Code [the similarly worded predecessor of § 13506] *requires* uniformity in any schedule of salaries making allowance for years of training and service, nevertheless, *uniformity is not violated by a reasonable classification.* [Citing *Fry, supra.*]" (*Id.,* at p. 445, italics added.) Subsequent cases interpreting former section 13506 consistently reaffirmed this general principle that any allowance made for training and experience must be "uniform," but might nonetheless be subject to "reasonable classification." (See *San Diego Federation of Teachers* v. *Board of Education* (1963) 216 Cal.App.2d 758, 762 [31 Cal.Rptr. 146]; *Lawe* v. *El Monte School Dist.* (1968) 267 Cal.App.2d 20, 22 [72 Cal.Rptr. 554]; *Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d

534, 541 [81 Cal.Rptr. 112]; *Sayre* v. *Board of Trustees, supra,* 9 Cal.App.3d 488, 491.)

Thus, the "reasonable classification" doctrine did not develop, as the majority suggests, from a notion that, under prior law, experience-training classifications need not be "uniform." Rather, it flowed from a realization that literal interpretation of the "uniformity" *requirement* would lead to unrealistic, inequitable, even absurd, results.

As the majority notes for its own purposes, the Legislature must be presumed to be aware of the judicial history of section 13506 and its predecessors when it enacted the 1969 amendments. These several changes are examined.

The amendments deleted the first two sentences of the prior version and replaced them with the following: "Effective July 1, 1970, *each person* employed by a district [as a teacher] . . . *shall be classified* . . . on the basis of uniform allowance for years of training and years of experience. *Employees* shall not be placed in different classifications on the schedule, nor paid different salaries, solely on the basis of the respective grade levels in which such *employees* serve." (Italics added.) Read in the context of prior law, the first sentence of the amended statute simply extends the required *use* of education-experience classifications to *secondary* teachers, for whom such classifications had previously been optional, as well as elementary teachers. The rule that any such classification established under the section be "uniform," however, is not changed, since, as we have seen, such "uniformity" was also mandatory under prior law. Finally, by the second sentence of the amendment, the Legislature dealt with a related but distinct issue—salary classifications based on grade level taught—and extended protection against that particular brand of discrimination to junior high and high school teachers.

Contrary to the majority's contention, this construction is not undermined by the rule against surplusage (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 627]; *Watkins* v. *Real Estate Commissioner* (1960) 182 Cal.App.2d 397, 400 [6 Cal.Rptr. 191]), since each sentence of the amendment serves a separate function. Nor does the "statement of purpose" enacted by the Legislature in amending section 13506 (Stats. 1969, ch. 1314, § 3, p. 2651) support the majority position. This statement declares that the legislative intent is "to establish a *uniform* base salary schedule in each school district" (italics added) while

not discouraging the use of "pay incentive programs." However, despite a judicial history which had engrafted a "reasonable classification" interpretation on the term "uniform" as previously used in section 13506, the declaration, like amended section 13506 itself, continues to employ that term without explanation or qualification. Where a word has been the subject of frequent judicial construction, its use in a subsequent legislative enactment is almost irrebuttably presumed to import the "precise and technical" meaning previously given by the courts. (*People* v. *Curtis* (1969) 70 Cal.2d 347, 355 [74 Cal.Rptr. 713, 450 P.2d 33]; *City of Long Beach* v. *Marshall* (1938) 11 Cal.2d 609, 620 [82 P.2d 362].) I must therefore conclude that the "uniform" salary structure imposed by the Legislature in 1969 is, as under prior law, subject to "reasonable classification."

I would therefore hold that the 1969 amendments to section 13506 had no effect on prior judicial authority permitting "reasonable" variations from strict "uniformity" in training-experience classifications. As our courts have recognized for nearly 40 years, such an interpretation comports with common sense, for any other would lead to results the Legislature cannot have intended. (See *People* v. *Barksdale* (1972) 8 Cal.3d 320, 334 [105 Cal.Rptr. 1, 503 P.2d 257].) To require rerating of all teachers in the district each time the experience-credit policy for new teachers is changed would obviously discourage the district from exercising its undoubted authority to set and alter its salary practices to conform to current needs. (See Ed. Code, § 13502 [now §§ 45022, 87801].) " 'Obviously, any time there is a change of policy, it creates a lack of uniformity in the sense that teachers who become members of the department while one policy is in effect are treated differently from teachers who become members of the department while a new policy is in effect. Such lack of "uniformity" is inevitable as a school board progresses with the needs of various periods and accordingly changes its policy.' " (*Sayre* v. *Board of Trustees, supra,* 9 Cal.App.3d at p. 491, quoting *Aebli* v. *Board of Education* (1944) 62 Cal.App.2d 706, 757 [145 P.2d 601].) It seems to me that the majority's vague allusions to "equitable treatment," while appealing, do not overcome this problem.

Moreover, literal application of the majority's position would force *downward* revision of existing experience credits to conform to a subsequent, more stringent credit policy. The majority dismisses this problem by saying it is not now before us. However, in these days of declining enrollments and teacher surpluses, such circumstances seem

bound to arise and, perhaps, to prevail. In any event, the court in *Aebli* v. *Board of Education, supra,* did face the question 34 years ago. The *Aebli* court rejected the interpretation now adopted by the majority, in large part because it found that an inequitable *downward* rerating could be the inescapable result of a literal "uniformity" requirement (62 Cal.App.2d 706, 757-758.)

We could conclude, of course, as the *Aebli* court did in effect, that veteran teachers acquire "vested rights" in their experience credit ratings, such that downward rerating is not permissible, despite the statutory requirement of "uniform" classification. Accordingly, veteran teachers would obtain the advantage of all more *liberal* policies subsequently adopted by the district, but would be insulated from the effects of more *stringent* ones. Such a result would, of course, inevitably discriminate against newer teachers despite a statute which, in the majority's view, seeks to establish absolute "uniformity."

I believe the majority, by misapplying the principles of legislative construction, has erred in its interpretation of amended section 13506. In my view, the statutory requirement that salary distinctions based on training and experience be "uniform" remains subject to "reasonable classification"; I further conclude that the distinction between new and veteran teachers employed by respondent district in this case is "reasonable." (*Sayre, supra,* 9 Cal.App.3d at p. 491.) I would therefore reverse the judgment.

Clark, J., concurred.