[No. A105633. First Dist., Div. Three. Jan. 7, 2005.]

In re HECTOR A. et al., Persons Coming Under the Juvenile Court Law.
JOSE A. et al., Plaintiffs and Appellants, v.
ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Defendant and
Respondent.

[No. A106295. First Dist., Div. Three. Jan. 7, 2005.]

In re HECTOR A. et al., Persons Coming Under the Juvenile Court Law.
ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
N.A., Defendant;
JOSE A. et al., Movants and Appellants.

COUNSEL

Mary R. Williams, under appointment by the Court of Appeal, for Plaintiffs and Appellants and for Movants and Appellants.

Richard E. Winnie, County Counsel, and Grace Fongmei Tam, Deputy County Counsel, for Defendant and Respondent and for Plaintiff and Respondent.

OPINION

**POLLAK, J.—** ■ This appeal questions the standard for determining the right of a minor to oppose a permanent plan for the adoption of his or her sibling on the ground that the adoption would substantially interfere with the sibling relationship. (Welf. & Inst. Code,[1] § 366.26, subd. (c)(1)(E).) In *In re Celine R.* (2003) 31 Cal.4th 45, 54 [1 Cal.Rptr.3d 432, 71 P.3d 787] (*Celine R.*), our Supreme Court held that the sibling relationship exception "permits the trial court to consider possible detriment to the child being considered for adoption, but not a sibling of that child." Here, two minors whose four siblings have been authorized to proceed to adoption appeal from the denial of their request under section 388, subdivision (b) to be heard on the applicability of the sibling relationship exception at the permanency placement hearing. ■ We conclude that a request to be heard under section 388, subdivision (b) should be granted if a sibling complies with

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise noted.

section 388, subdivision (b)(1)–(4) and demonstrates a close relationship with the minor being considered for adoption, but that the trial court's failure to grant a request to be heard in this case gave rise to no prejudice.

BACKGROUND

On April 16, 2002, the Alameda County Social Services Agency (the agency) filed a petition under section 300, subdivision (b) for six half brothers and sisters,[2] whose ages at that time were 10, 9, 8, 5, 4, and 2. The petition alleged 11 previous referrals in San Francisco County for neglect by the mother. The detention report filed the next day stated that on April 14, 2002, the mother and the children were staying at a shelter in Hayward because they were being physically abused by the alleged father of one of the children. Mother left the shelter at 11:00 that morning and told the shelter staff that she would return by 3:00 that afternoon. When mother had not returned by that evening, the shelter staff referred the children to the agency.

The mother was not present at the detention hearing on April 17, and the children were retained in the custody of the agency. Hector, the oldest, and the three youngest children were placed together in one foster home. Nine-year-old Jose and the eight-year-old were placed in a separate foster home because it was not possible to find a single home to accommodate all six children. On April 29, the social worker prepared a disposition report indicating that the mother agreed the children should remain in their foster homes until she could improve her situation. On May 1, the court adopted the social worker's recommendations.

In the following months, the children visited with their mother and with each other. The children reportedly enjoyed the time spent with each other. Hector and three youngest children adapted well to their foster home. Jose and the eight-year-old had to be moved three times, but eventually were placed in a supportive home.

The mother participated only sporadically in reunification services, and on April 8, 2003, the social worker filed a report that recommended terminating reunification services and setting a permanency planning hearing under section 366.26 for Hector and the three youngest children. The social worker had concluded that these four children could be adopted. The social worker also concluded that Jose would be adoptable but needed further treatment for his emotional problems before he could be adopted, and that the eight-year-old was adoptable but that placing him for adoption at that point would interfere with his sibling relationship with Jose.

---

[2] All of the children have a common mother and different fathers, which renders them siblings under section 388, subdivision (b) ["a sibling related by blood, adoption or affinity through a common legal or biological parent"] and under related provisions of the Welfare and Institutions Code. (E.g., § 362.1, subd. (c).) The agency was not able to locate any of the fathers during the proceedings relevant to this appeal.

A contested 12-month review hearing took place in June through August 2003. The court found no substantial probability that the children would be returned to the mother, terminated services, and set a hearing pursuant to section 366.26 for December 16, 2003, for Hector and the three youngest children.

On October 10, 2003, the public defender's office, which had been representing all of the children, declared a conflict of interest because Jose and the eight-year-old objected to the planned adoption while Hector supported it. The three youngest children were too young to express an opinion. Jose and the eight-year-old then filed a petition under section 388, subdivision (b) to participate in the section 366.26 hearing as the siblings of the children who were the subject of that hearing. In that petition, they contended that the adoption of the four other siblings would substantially interfere with their sibling relationship. Jose and the eight-year-old also requested that, if the court chose adoption as the permanent plan, the visitation order already in place, which allowed the children to visit regularly, be continued until they too were adopted. Finally, they asked that the court and the parties "explore the possibility of sibling visitation as part of a postadoption contract agreement" under section 366.29, subdivision (a).

On December 16, 2003, the court heard the petition of Jose and the eight-year-old. The court denied the petition without comment, and the two timely appealed. On April 12, 2004, the court held the section 366.26 hearing and terminated parental rights as to Hector and the three youngest children. At that hearing the court rejected a request by counsel for Jose and the eight-year-old to make orders regarding postadoption visitation. The two children separately appealed from the order terminating parental rights as to the other four children and this court consolidated the two appeals.

DISCUSSION

*Sibling participation in the termination hearing*

■ In juvenile dependency proceedings, when reunification efforts fail, as they have in this case, "the court must terminate reunification efforts and set the matter for a hearing pursuant to section 366.26 for the selection and implementation of a permanent plan." (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) The first choice for permanency, if possible, must be to "terminate parental rights and order that the child be placed for adoption . . . . [¶] We thus see that if the child is adoptable . . . adoption is the norm. Indeed, the court must order adoption and its necessary consequence, termination of parental rights, unless one of the . . . circumstances [specified in section 366.26, subdivision (c)(1)(A–E)]

provides a compelling reason for finding that termination of parental rights would be detrimental to the child. . . . The statutory exceptions merely permit the court, in *exceptional circumstances* [citation], to choose an option other than the norm, which remains adoption." (*Celine R., supra,* 31 Cal.4th at p. 53.)

■ One of the five statutory justifications for refraining from terminating parental rights and placing adoptable children in adoptive homes is the "sibling relationship exception." Under section 366.26, subdivision (c)(1)(E), the court must weigh whether "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." When considering the sibling relationship exception, the concern is the best interests of the child being considered for adoption, not the interests of that child's siblings. "[T]he court may reject adoption under this sibling relationship exception only if it finds adoption would be detrimental to the child whose welfare is being considered. It may not prevent a child from being adopted solely because of the effect the adoption may have on a sibling." (*Celine R., supra,* 31 Cal.4th at pp. 49–50.)

■ There is no dispute that Hector and the three youngest children are adoptable. Jose and the eight-year-old wished to oppose the adoption by asserting the sibling relationship exception at the section 366.26 hearing. A parent whose parental rights will be terminated has standing to assert this exception (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 948–951 [124 Cal.Rptr.2d 688]) as undoubtedly does the minor who is being considered for adoption. Siblings who are not the subject of the termination hearing, even if they are also the subject of the dependency proceedings, have no such automatic right. (See Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2004 ed.) Dependency, § 2.171[5][a], p. 2-310.)[3]

---

[3] In *Celine R.* although the court held that the standard is whether the adoption would be detrimental to the adoptive child, it did not question the right of the nonadoptive sibling to assert the applicability of the sibling relationship exception. That issue was not presented in *Celine R.* because all of the siblings were represented by the same attorney, who expressed his concerns over application of the exception to the nonadoptive child, and the likelihood of a conflict of interest was not recognized when section 366.26, subdivision (c)(1)(E) was enacted during the course of the proceedings. (*Celine R., supra,* 31 Cal.4th at pp. 55–62.) In the present case, the conflict between the interests of the two groups of siblings was recognized and separate counsel were appointed.

■ In order to be entitled to appear at the section 366.26 hearing for the four other siblings and to assert the sibling relationship exception, Jose and the eight-year-old properly petitioned the court under section 388, subdivision (b). Subdivision (b) was added to section 388 in 2000 (Stats 2000, ch. 909, § 7). Section 388 formerly addressed solely motions to modify orders that the juvenile court had already entered, now covered in subdivision (a). What is now subdivision (c) addresses procedures with respect to motions under both subdivisions (a) and (b). While these procedures apply in a straightforward manner to motions to modify existing orders, their application to some motions authorized by subdivision (b) is problematic. The same can be said with respect to rule 1432 of the California Rules of Court, which specifies standards and procedures for deciding a "petition for modification." The rule refers to all of section 388 and there is no other rule for a motion under subdivision (b), but much of rule 1432 sensibly applies only to an application to modify an existing order.

Section 388, subdivision (b) provides: "Any person, including a child who is a dependent of the juvenile court, may petition the court to assert a relationship as a sibling . . . to a child who is, or is the subject of a petition for adjudication as, a dependent of the juvenile court, and may request visitation with the dependent child, placement with or near the dependent child, *or consideration when determining or implementing a case plan or permanent plan for the dependent child* or make any other request for an order which may be shown to be in the best interest of the dependent child. . . . The petition shall be verified and shall set forth the following: [¶] (1) Through which parent he or she is related to the dependent child. [¶] (2) Whether he or she is related to the dependent child by blood, adoption, or affinity. [¶] (3) The request or order that the petitioner is seeking. [¶] (4) Why that request or order is in the best interest of the dependent child." (Italics added.)

■ Subdivision (c) of section 388 provides: "If it appears that the best interests of the child may be promoted by . . . recognition of a sibling relationship, . . . the court shall order that a [noticed] hearing be held . . . ." As is true of motions under section 388, subdivision (a), most applications authorized by subdivision (b) such as a request for visitation or placement with the dependent child, if granted, thereby become operative and affect the treatment of the minor in some respect. Hence, if the petition makes the necessary prima facie showing, subdivision (c) requires that a hearing be held on the application. " '[I]f the petition presents any evidence that a hearing would promote the best interests of the child, the court will order the hearing.' " (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415 [33 Cal.Rptr.2d 85, 878 P.2d 1297], quoting *In re Heather P.* (1989) 209 Cal.App.3d 886, 891

[257 Cal.Rptr. 545].) Since the request for "consideration when determining . . . a . . . permanent plan for the dependent child" seeks merely the right to be heard, if the section 388, subdivision (b) petition makes the necessary prima facie showing, the court and the parties may consider it more expedient to grant the petition and defer consideration of the strength of the sibling relationship to the section 366.26 hearing.[4]

■ While a sibling of the child proposed for adoption thus must obtain an order pursuant to section 388 to become entitled to participate in the section 366.26 hearing, the statute is not perfectly clear as to what the nonadoptive sibling must establish to be entitled to such an order. According to subdivision (b)(4), the verified petition must set forth "[w]hy [the] request or order is in the best interest of the dependent child." Under subdivision (c), a noticed hearing must be held "If it appears that the best interests of the child may be promoted by . . . recognition of a sibling relationship." According to one practice guide, "for a sibling to have standing to assert the sibling exception should apply to prevent the termination of parental rights of the dependent child whose case is before the court, the sibling must first prove under . . . § 388(b)–(c) that allowing the sibling to litigate the sibling exception is in the best interest of the dependent child that is before the court." (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure, *supra*, Dependency, § 2.171[5][a], p. 2-310.)

■ None of these articulations is particularly helpful. In order for the nonadoptive sibling to obtain the right to be heard, it should not be necessary to prove that detriment to the adoptive child from disrupting the sibling relationship would be so substantial that adoption is not in the best interests of that child. That is the ultimate question to be determined at the section 366.26 hearing. The nonadoptive sibling need not prove that he or she will prevail in opposing the adoption in order to obtain the right to participate in the hearing. The petitioning sibling need show only that there is a sufficient bond with the adoptive child that the best interests of that child require full consideration of the impact of interfering with that relationship before a decision is reached on the permanency plan.

■ An appropriate understanding of what the court should consider in passing on such a petition under section 388, subdivision (b) begins with

---

[4] Alternatively, in the discretion of the juvenile court, the hearing under section 388, subdivision (c) might be held immediately prior to commencement of the section 366.26 hearing or, despite the apparent incongruity of determining the right to participate in the section 366.26 hearing as part of the section 366.26 hearing itself, the two hearings might be consolidated.

recognition of the two distinct but interrelated issues that are presented when the sibling relationship exception is asserted at the section 366.26 hearing. "Under section 366.26, subdivision (c)(1)(E), the court is directed first to determine whether terminating parental rights would substantially interfere with the sibling relationship by evaluating the nature and extent of the relationship, including whether the child and sibling were raised in the same house, shared significant common experiences or have existing close and strong bonds. [Citation.] If the court determines terminating parental rights would substantially interfere with the sibling relationship, the court is then directed to weigh the child's best interest in continuing that sibling relationship against the benefit the child would receive by the permanency of adoption." (*In re L. Y. L.*, *supra*, 101 Cal.App.4th at pp. 951–952.) The petition of a nonadoptive sibling under section 388, subdivision (b) raises only the first of these two questions.

Section 388, subdivision (b) is but one of the numerous additions that have been made to the Welfare and Institutions Code since 1992 recognizing the importance of sibling relationships to the psychological health of dependent children and of the need to preserve such relationships whenever possible. (E.g., §§ 358.1, subd. (d), 361.2, subd. (i), 362.1, 366.26, subd. (c)(1)(E), 16002; see generally, Schwartz, *Siblings Torn Apart No More* (2001) 32 McGeorge L.Rev. 704.) As the Legislature noted in amending section 388, "By sprinkling language requiring consideration of the sibling relationship over the many statutes governing different stages of dependency proceedings, proponents hope that the goal of preserving and strengthening the child's family ties . . . will be fulfilled." (Sen. Com. on Judiciary, Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1987 (1999–2000 Reg. Sess.) as amended May 16, 2000.)

Yet, "[n]ot all sibling relationships are strong or healthy." (Schwartz, *Siblings Torn Apart No More*, *supra*, 32 McGeorge L.Rev. at p. 708.) "[T]he existence of a brother or sister does not guarantee a sibling relationship." (Williams, *Sibling Rights to Visitation: A Relationship Too Valuable to Be Denied* (1995) 27 U.Tol. L.Rev. 259, 262.) "Many siblings have a relationship with each other, but would not suffer detriment if that relationship ended. If the relationship is not sufficiently significant to cause detriment on termination, there is no substantial interference with that relationship. To determine the significance of the sibling relationship, the court considers the [nonexclusive] factors set forth in section 366.26, subdivision (c)(1)(E)." (*In re L. Y. L.*, *supra*, 101 Cal.App.4th at p. 952.)

█ The section 388, subdivision (b) petition does not call upon the court to weigh the detriment of interfering with the sibling relationship against the advantages to the adoptive dependent of adoption, but merely to determine whether there is a sufficiently close relationship between the siblings that the nonadoptive sibling should be permitted to urge consideration of this factor when a permanency plan for the adoptive child is considered at the section 366.26 hearing. As with other petitions under section 388, the petition should be liberally construed in favor of its sufficiency. (Cal. Rules of Court, rule 1432(a); see also *In re Marilyn H.* (1993) 5 Cal.4th 295, 309 [19 Cal.Rptr.2d 544, 851 P.2d 826]; *In re Jasmon O., supra,* 8 Cal.4th at p. 415.) If a separate hearing is conducted pursuant to subdivision (c) of section 388, the hearing should be confined to whether there are sibling bonds that will be adversely affected by an adoption, without anticipating the balancing of conflicting interests that will occur at the section 366.26 hearing.

In amending section 388 to recognize sibling relationships, the Legislature took into account the fact that under then-existing juvenile law, "many young people who are removed from their parents due to abuse and neglect are also inadvertently separated from their siblings. Sibling bonds and mutual support can be one of the most important linkages to a young person entering the juvenile dependency system. . . . [¶] . . . [¶] While sibling relationships already receive some consideration during a child's period of dependency, oftentimes the relationship is ignored or not given sufficient weight for whatever reason. This bill, it is hoped, would improve the treatment of these relationships in the context of an already complex set of state and federal rules and regulations, and thus ensure that these relationships, where they exist, are given sufficient consideration by the social workers, the courts, and the child's caregivers, ultimately for the best interest of the child." (Sen. Com. on Judiciary, Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1987 (1999–2000 Reg. Sess.) as amended May 16, 2000.)

█ Jose and the eight-year-old contend that section 388, subdivision (b) should not be held to apply to children who are already the subject of dependency proceedings. This is so, they reason, because that section requires the petitioner to set forth the manner in which the siblings are related, and if the siblings are all before the juvenile court, the court already has that information available to it. Thus, they argue, interpreting the statute to apply to them would render that portion of the statute surplusage. We disagree. Although the court records may contain the information from which the existence of the sibling relationship could be ascertained, requiring the inclusion of this information in the petition facilitates consideration of the petition and ensures that the court does not overlook pertinent information.

Further, section 388, subdivision (b) expressly provides that "[a]ny person, *including a child who is a dependent of the juvenile court*, may petition the court to assert a [sibling] relationship . . . ." (Italics added.) If possible we must interpret a statute in a way that gives " 'significance . . . to every word, phrase, sentence and part . . . .' " (*Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].) To interpret the statute as Jose and the eight-year-old propose would run afoul of this principle.

 Jose and the eight-year-old also argue that newly enacted notice provisions entitle them to participate in the termination hearing. In 2003, the Legislature added identical provisions to sections 290.1 through 295 providing that for various stages of the dependency proceedings, including the section 366.26 hearing (§ 294, subd. (a)(4)), notice shall be given to "[a]ny known sibling of the child who is the subject of the hearing if that sibling either is the subject of a dependency proceeding or has been adjudged to be a dependent child of the juvenile court. . . . However, notice is not required to be given to any sibling whose matter is calendared in the same court on the same day." Section 294, subdivision (a)(4) ensures that the siblings are apprised of an upcoming hearing under section 366.26 and have the opportunity to request the right to participate by means of a petition under section 388, subdivision (b). There is nothing in the notice provision, however, dispensing with the need to gain permission to participate in the section 366.26 hearing by obtaining an order under section 388, subdivision (b).

 While we thus reject the contention that Jose and the eight-year-old were entitled to participate in the section 366.26 hearing without complying with section 388, subdivision (b), or that they necessarily were entitled to participate simply because they are siblings, we do agree that they made a sufficient showing to have entitled them to participate in the section 366.26 hearing in this case. In support of the petition, the court had before it a declaration by Jose and the eight-year-old's counsel detailing the extent of the siblings' relationship. The declaration explained, among other things, that all six of the children lived together before they were taken into custody by the agency; that the children had the shared experiences of homelessness, their mother's substance abuse, and domestic violence perpetrated by their mother and her partners; that Hector looked after the younger children when the mother left the children alone; and that the children had enjoyed visiting with each other since being placed in two separate foster homes. "Although they were not placed together, the children have been visiting each other regularly since they entered foster care and thus have not forgotten each other. The children enjoy visiting with each other." These are all of the positive "indicators of the nature of the child's sibling relationships" that must be included in the social studies submitted to the dependency court (§ 358.1, subd. (d)(2)) and considered under section 366.26, subdivision (c)(1)(E). At

no point did any party to the dependency proceedings dispute the existence of a close sibling relationship or suggest that interfering with the relationship would be inconsequential to the four children being considered for adoption.

Counsel for the adoptive children opposed the section 388 petition, arguing that "My clients' best interests are in the adoption." As indicated above, however, this contention was premature and did not militate against giving the nonadoptive children the right to be heard at the permanency placement hearing. Indeed, in *Celine R.*, the Supreme Court observed that "[t]he sibling's relationship with the [adoptive] child is not irrelevant. Certainly, evidence of the sibling's relationship with the child and, if the sibling is articulate, perhaps of the sibling's views of that relationship, might be relevant as indirect evidence of the effect the adoption may have on the adoptive child. . . . *In an appropriate case, the court should carefully consider all evidence regarding the sibling relationship as it relates to possible detriment to the adoptive child.*" (*Celine R.*, *supra*, 31 Cal.4th at p. 55, italics added.)

In the juvenile court, the agency also opposed the section 388, subdivision (b) petition, arguing that "It is not . . . appropriate to deem Jose and [the eight-year-old] to be parties in that hearing, as distinguished from perhaps being witnesses called by the mother or by the other 4 minors. To deem Jose and [the eight-year-old] parties, with consequent rights to examine and cross-examine witnesses and even to appeal from section 366.26 orders, [fn. omitted] could easily prolong the hearing and result in appellate delay contrary to the need for prompt permanent planning." This view, however, ignores the recognition implicit in the statute and express in *Celine R.* that in appropriate circumstances the nonadoptive siblings should have their views considered as to the impact of the sibling relationship on the best interests of the sibling being considered for adoption. The right of a nonadoptive sibling to obtain such consideration is not dependent on whether other parties to the proceedings choose to assert the sibling relationship exception. Moreover, while permitting additional siblings to appear at the section 366.26 hearing may extend the proceedings slightly, the prolongation in most instances will be minimal. The minors of course appear through counsel and the trial court retains broad authority to manage the conduct of the hearing, including the ability to limit or preclude redundant testimony. An appeal by the nonadoptive siblings would not delay implementation of the permanent plan. (§ 395; Cal. Rules of Court, rule 1435(c).) If the agency's concerns were sufficient to justify denial of a section 388, subdivision (b) application, such a petition might never be granted. The nonadoptive sibling's participation in the permanent placement hearing would never be in the best interests of the adoptive child unless it were established that the adoptive child's best interests dictate against adoption—again requiring a premature analysis of the issue to be decided at the section 366.26 hearing.

A petition under section 388, subdivision (a) "is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion." (*In re Jasmon O., supra,* 8 Cal.4th at p. 415.) We see no reason why the same standard of review should not apply to a petition under subdivision (b). Nonetheless, we are constrained to conclude that the denial of the petition of Jose and the eight-year-old did constitute such an abuse. Their petition demonstrated the existence of a close and continuing relationship with their siblings that no one disputed. No party suggested that the proposed adoptions would not have some negative impact on those relationships. The arguments that were made in opposing the application were predicated on an incorrect standard, and the record contains no indication that the trial court relied on any other consideration in denying the petition. Therefore, while the detriment to Hector and the three youngest children from disrupting the sibling relationship may, in the final analysis, have been insufficient to overcome the advantages of securing a permanent adoptive home, Jose and the eight-year-old were entitled at least to be heard before the court reached that conclusion.

While the section 388, subdivision (b) petition should have been granted, we have before us the record in the hearing under section 366.26, in which adoption was approved as the permanency plan for the four adoptive children, and from which we are able to discern that no prejudice resulted from the denial of the section 388 petition. Counsel for Jose and the eight-year-old were present at the termination hearing. While counsel for the four adoptive children again objected to the participation of Jose and the eight-year-old as parties, he agreed that they could appear as witnesses. When counsel for Jose and the eight-year-old stated that he believed they had "the right to give input at the implementation of the .26 hearing," the court stated, "You've got the statements of the children. That's going to be considered, is that correct?" Counsel answered, "Yes." The court then stated, referring to the statements of Jose and the eight-year-old, "County Counsel has said I can read it, consider it and that's the extent of it." No statements from Jose and the eight-year-old appear in the record on appeal, but the two do not dispute that the juvenile court took their statements into consideration before terminating parental rights. Moreover, the record does contain the agency's February 5, 2004 status review report which, like other reports in the record, describes the relationships between and among the siblings and their respective feelings towards their placements. On appeal, Jose and the eight-year-old do not suggest that they had any additional information concerning the sibling relationships that they were precluded from presenting, nor do they challenge the court's ultimate finding that terminating parental rights and proceeding to adoption was in the best interests of Hector and the three youngest children. Thus it appears that the juvenile court did fully consider the ramifications of the sibling relationships. There being no prejudice, there

is no basis to reverse either order from which appeals have been taken. (See, e.g. *Celine R., supra,* 31 Cal.4th at p. 59 ["Courts should strive to give the child this stable, permanent placement, and this full emotional commitment, as promptly as reasonably possible consistent with protecting the parties' rights and making a reasoned decision. The delay an appellate reversal causes might be contrary to, rather than in, the child's best interests. Thus, a reviewing court should not mechanically set aside an adoption order because of error in not giving that child separate counsel; the error must be prejudicial under the proper standard before reversal is appropriate"].)

*Postadoption visitation orders*

Jose and the eight-year-old also challenge the juvenile court's refusal to issue an order for mediation of postadoption contact at the section 366.26 hearing. At the termination hearing, counsel for the two children stated, "I would . . . request the court order mediation to occur so that the minors can talk about possible post-adoption visitation." Counsel for the other four children objected, stating that the foster parents, who were to become the adoptive parents, had no objection to allowing the visitation orders already in place to remain. "So there's no need to mediate any kind of a decision to allow visitation to occur at this time. There's simply no need for mediation nor is there any need for any orders at this time regarding post-adoption mediation. The minors have not been adopted at this time. And any adoption orders are independent of the other minors' case." Because the hearing was for termination of parental rights and not for the adoption itself, counsel for the agency asked "the court not to make a ruling to order mediation at this time." The court agreed and made no ruling.

On appeal, Jose and the eight-year-old argue that section 366.29, subdivision (a) requires the court to make orders regarding postadoption visitation at the termination hearing. The statute simply does not support their argument. It provides: "When a court, pursuant to Section 366.26, orders that a dependent child be placed for adoption, nothing in the adoption laws of this state shall be construed to prevent the prospective adoptive parent or parents of the child from expressing a willingness to facilitate postadoptive sibling contact. With the consent of the adoptive parent or parents, the court may include *in the final adoption order* provisions for the adoptive parent or parents to facilitate postadoptive sibling contact. In no event shall the continuing validity of the adoption be contingent upon the postadoptive contact, nor shall the ability of the adoptive parent or parents and the child to change residence within or outside the state be impaired by the order for contact." (§ 366.29, subd. (a), italics added.) There is nothing in this provision that required the court to address postadoption visitation when terminating parental rights under section 366.26.

DISPOSITION

The orders of the juvenile court from which these appeals were taken are affirmed.

McGuiness, P. J., and Parrilli, J., concurred.