[Civ. No. 43862. Second Dist., Div Two. Jan. 31, 1975.]

LYNDA MAE CHAFFIN, Plaintiff, Cross-defendant and Appellant, v. JESSE E. FRYE et al., Defendants, Cross-complainants and Respondents.

**COUNSEL**

Albert Gordon for Plaintiff, Cross-defendant and Appellant.

Elena H. Ackel, Bette Bardeen and Fred Okrand as Amici Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

No appearance for Defendants, Cross-complainants and Respondents.

## OPINION

**FLEMING, J.**—Appellant Lynda Mae Chaffin contests an order awarding custody of her two daughters to her parents, respondents Jessie and Mary Frye.

Appellant and Elbe Chaffin married in Seattle, Washington, in October 1959 and had two children, Tracy, born April 1960, and Rachelle, born July 1962. Elbe obtained a default divorce from appellant in Idaho in August 1962, the Idaho court awarding custody of the two children to appellant and requiring Elbe to pay $120 per month child support. Appellant and her children lived with respondents in the State of Washington until appellant moved to California in 1968. The children continued to live with respondents except when they visited appellant during summer vacations. In 1969 the Idaho court modified its divorce judgment to award custody of the children to respondents and ordered Elbe to pay the monthly child support to them.

In August 1973 while the children were visiting appellant during summer vacation, she petitioned the superior court in Los Angeles to establish the Idaho divorce judgment as a California judgment and award custody of the children to her. She alleged that the 1969 Idaho modification of custody had been made without her knowledge. Respondents cross-complained to establish the Idaho judgment as a California judgment and, apparently conceding the invalidity of the 1969 modification, they sought to modify the judgment to give them custody of the children pursuant to Civil Code section 4600. In their cross-complaint respondents pleaded that an award of custody to respondents would serve the children's best interests and welfare and an award of custody to appellant would be detrimental to the children.

The superior court requested the county probation department to investigate and recommend an appropriate disposition. At the custody hearing in December 1973, the probation officer recommended that custody of the children be awarded to respondents, concluding that while appellant appeared to be currently providing for the children's physical needs, several factors militated against an award of custody to her:

First, appellant is unstable socially and financially. Between 1965 and 1972 she was arrested five times (bad checks, defrauding an innkeeper, shoplifting), and two of these arrests resulted in criminal convictions. In 1968 appellant went into bankruptcy. Appellant and her female compan-

ion are unemployed. Appellant receives social security benefits of $257 a month, and if the children lived with her she would get an additional $120 a month in social security benefits and the $120 a month child payment from Elbe. She also receives monthly disability benefits of $271 which will expire in 1976. Appellant rents a two-bedroom apartment in a middle-class Torrance residential area for $230 a month. Appellant and her companion earn about $150 a month doing odd jobs and art projects; they hope to organize a home decor business that will bring in more money in the future.

Second, appellant states she is totally disabled. She worked for a computer design company from 1969 until 1971 when she injured her leg. After several operations she still walks with a limp. She also suffers from temporal arteritis which causes periodic blackouts, although she says that medication has controlled the blackouts. Additionally, she has a bad back which requires her to sleep on a special apparatus.

Third, appellant is a homosexual. She has lived with her female companion since 1968 and will continue to live with her in the same apartment that the children would live in. Although appellant denies she ever engaged in immoral conduct in front of the children or engaged in any immoral conduct with her companion during the past two years, the probation officer believes the possibility of homosexual conduct still exists. The children told him they know appellant is a homosexual, but they never saw her engage in immoral conduct. The children also said they prefer to live with appellant, that respondents do not properly supervise them. The probation officer believed that some of the children's statements were rehearsed.

Fourth, respondents have provided a suitable home for the children. They live in a large three-bedroom house on the outskirts of Marysville, Washington. Jessie Frye, born in 1914, is disabled and receives state compensation of $485 per month. Mary Frye, born in 1918, works as a hairdresser in her own beauty shop attached to their house; her gross income is about $1,100 per year. Respondents own three automobiles and also own income property bringing in about $75 per month. Respondents have three other children. One son, a hairdresser and rumored homosexual, lives in Seattle and often visits respondents. Respondents told the probation officer that appellant did not want the children before and only wants them now to obtain increased social security and child support payments. "She has brainwashed the children and also made them scared to death of her. Her roommate has slapped the little one many times."

Fifth, Elbe Chaffin, father of the two children, told the probation officer the children should be with respondents, with whom they have spent most of their lives. "A woman such as this should not have custody of the children for she has lived with different women in the past. She also has a crime record a mile long. There is nobody . . . that can guarantee that these children will not be exposed to the behavior of their mother and her girl friend."

At the hearing appellant denied the accusations of respondents and Elbe. She testified she loves the children and provides them with proper care and supervision. Her relationship with her female companion will have no adverse effect on the children, and the children get along well with her companion. Respondents did not properly supervise the children, and even threatened to throw them out if appellant did not take them. In 1968 she came to California alone because she had no job and no place to stay. After she established herself she brought the children to California, but she soon contracted pneumonia and suffered a heart seizure, and respondents took the children back to Washington. Thereafter, appellant decided it would be better for the children to stay with respondents: the children wanted to stay with them; appellant would have been required to leave the children with strange baby sitters while she worked; Jessie Frye would give them a father image; Mary Frye worked at home and could look after them. Now, however, the children prefer to be with appellant, and she wants them back.

The trial court considered this evidence and, with the consent of the parties, talked with the children in an unreported session in chambers. Later, without making formal oral or written findings, the court rendered its decision by minute order: "Custody of the minor children . . . is awarded to the respondents . . . as of January 1, 1974, with the right of reasonable visitation reserved to [appellant]."

The first question on appeal is procedural: does the custody order fail for want of written findings of fact? We conclude it does not. While written findings are ordinarily required after a court trial of a contested issue of fact, Code of Civil Procedure section 632 states that "Unless findings are requested, the court shall not be required to make written findings and conclusions." Since no one requested written findings and conclusions, they would not normally be required. Appellant, however, cites Civil Code section 4600, which in setting out the standard for a child custody order provides, "Before the court makes any order awarding custody to a person or persons other than a parent, without the

consent of the parents, it must make a finding that an award of custody to a parent would be detrimental to the child, and the award to a nonparent is required to serve the best interests of the child." Section 4600, however, does not require the court to make this finding in writing. (*Guardianship of Marino,* 30 Cal.App.3d 952, 959-960 [106 Cal.Rptr. 655].) While it is true that in *In re B.G.,* 11 Cal.3d 679, 699 [114 Cal.Rptr. 444, 523 P.2d 244], the Supreme Court reversed a custody order because the trial court failed to make an express finding that an award of custody to a parent would be detrimental to the child, in that case the trial court had invoked the wrong standard, and it was uncertain what its decision would have been if it had applied the correct standard of detriment to the child prescribed by section 4600. The reviewing court, therefore, required that a finding be made based upon the correct standard. No comparable difficulty arises here. The correct issue was tendered by the pleadings, and the sole question before the court at the custody hearing was detriment to the children from an award of custody to appellant and service of their best interests from an award to respondents. Since issue was joined on the sole question of custody pursuant to Civil Code section 4600, we will presume that the trial court made the requisite finding under section 4600.[1] (Cf. *In re J.T.,* 40 Cal.App.3d 633, 641-642 [115 Cal.Rptr. 553], where defective pleading of the correct issue compelled reversal.)

██ The second question is substantive: does the record contain sufficient evidence to support the trial court's finding that an award of custody to appellant would be detrimental to the children and an award to respondents would serve the best interests of the children? We conclude that it does.

Appellant and amicus curiae attempt to fashion this cause as one in which the trial court deprived appellant of the fundamental right to custody of her children (see *Stanley* v. *Illinois,* 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208]) solely because she stated she was homosexual and had engaged in past homosexual conduct. (See *Morrison* v. *State Board*

---

[1] If a specific finding is thought essential to make the trial court's order effective, then in order to effectuate the trial court's order and assure timely appellate review we enter the following finding based on the allegations of paragraph VI of respondents' cross-complaint: "Cross-Complainants are the natural parents of the cross-defendant, Lynda Mae Chaffin, and are the maternal grandparents of the said minor children, and are fit and proper persons to have custody of the said children, and the best interests and welfare of the said children require that their custody be awarded to the cross-complainants herein. An award of custody of said minor children to the cross-defendant, Lynda Mae Chaffin, would be detrimental to the said children." (Code Civ. Proc., § 909; cf. *Guardianship of Marino,* 30 Cal.App.3d 952, 959-961 [106 Cal.Rptr. 655].)

*of Education,* 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375].) However, that is not the issue presented by the evidence, for when the case is viewed in the light most favorable to respondents (*Messer* v. *Messer,* 259 Cal.App.2d 507, 509 [66 Cal.Rptr. 417]), other factors relevant to the issue of custody are seen to be present, and the combination of these factors with that of homosexuality fully justifies the trial court's custody award.

First, appellant's history demonstrates an unwillingness to assume continuous and full responsibility for her children. And her periodic brushes with the criminal law further indicate her unwillingness to face adult responsibility. Unlike the parent in *Stanley* v. *Illinois, supra,* 405 U.S. 645, appellant has not retained actual and continuous custody of the children. Long ago she abdicated her parental duties and left the principal responsibility for bringing up her children to respondents, retaining only occasional personal contact with the children. The court was entitled to conclude that appellant, in spite of temporary good intentions, would not properly and permanently assume these full responsibilities in the future and that an award of custody to her would be detrimental to the children.

Conversely, the children have been continuously under respondents' roof for almost their entire lives, the elder girl since the age of two and the younger girl since the time of birth. Washington provides the only permanent home they have known, and respondents have given the children whatever continuity and stability has been brought into their lives. These are potent factors which carry great persuasiveness in the determination of what would serve the children's best interests.

We note, too, that the trial court talked with the children in an unreported session in chambers. Civil Code section 4600 provides: "If a child is of sufficient age and capacity to reason so as to form an intelligent preference as to custody, the court shall consider and give due weight to his wishes in making an award of custody or modification thereof." Facts developed at that interview, not available for review on appeal, may well have affected the trial court's disposition of the cause.

Next, homosexuality is a factor which the trial court could consider. At bench, this factor is not merely fortuitous or casual, but rather it dominates and forms the basis for the household into which the children would be brought if custody were awarded to appellant. Appellant does not merely say she is homosexual. She also lives with the woman with

whom she has engaged in homosexual conduct, and she intends to bring up her daughters in that environment. The trial court was not required to believe appellant's self-serving statements about the present nature of her homosexual relationship, nor was it required to disregard the potential psychological influence that appellant's homosexual relationship might have upon her daughters. The commission of certain homosexual acts is a criminal offense in California (Pen. Code, §§ 286, 288a), albeit an offense not readily susceptible to criminal prosecution. ■ The fact that in certain respects enforcement of the criminal law against the private commission of homosexual acts may be inappropriate and may be approaching desuetude, if such is the case, does not argue that society accepts homosexuality as a pattern to which children should be exposed in their most formative and impressionable years or as an example that should be put before them for emulation. In exercising a choice between homosexual and heterosexual households for purposes of child custody a trial court could conclude that permanent residence in a homosexual household would be detrimental to the children and contrary to their best interests.

■ In sum, the evidence supports the trial court's finding that an award of custody to appellant would be detrimental to the children and an award of custody to respondents would serve the children's best interests. We articulate and make explicit that finding, and we find no abuse of discretion in the trial court's custody order. (*Bookstein* v. *Bookstein,* 7 Cal.App.3d 219, 224 [86 Cal.Rptr. 495].) In the event of an appropriate change in circumstances, appellant may, of course, apply to the trial court for modification of the custody order.

The order is affirmed.

Roth, P. J., and Beach, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 26, 1975. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.