Opinion
 

 ASHBY, J.
 

 —Appellant Jacqueline Sue Volkland Norton, the natural mother of the minor, Dietrich Volkland, appeals from an order awarding custody of the minor to the maternal grandmother, Effie Volkland, and from an order denying appellant’s motion for reconsideration.
 

 The minor was bom on June 8, 1965, and lived with appellant until the age of four,
 
 [1]
 
 but in 1969 appellant voluntarily left him in the custody of the grandmother. For the next seven years, the minor lived with the grandmother in Nevada, Missouri. Between 1969 and 1970, appellant visited the minor there every month to six weeks, but then appellant moved back to California, and since that time visited the minor twice a year.
 

 Appellant married Daniel Norton in August 1974. Apparently appellant subsequently made efforts to have the minor returned to her. In June 1975 the grandmother obtained an order of the juvenile court in Vernon County, Missouri, placing temporary custody of the minor in the grandmother. In May 1976, without the knowledge and consent of the grandmother, appellant abducted the minor from his school in Nevada, Missouri, and brought him to Long Beach, California. In June 1976, appellant filed in superior court an order to show cause re custody of minor, seeking that custody be awarded to her.
 

 Both appellant and the grandmother appeared at the hearing and testified. Other witnesses testified, and both sides submitted affidavits, declarations, and letters from interested persons. The trial court interviewed the minor personally in chambers.
 

 The trial court found it was in the best interest of the minor to award custody to the grandmother and that it would be detrimental to award custody to appellant.
 

 
 *677
 
 According to appellant’s testimony, she gave up the child in 1969 because she was having “very severe financial problems, and I was having some difficulty just getting my life arranged.” Having resigned a job in California, she had gone to Kansas temporarily to look for employment. She let her brother and his wife, and then her aunt, take care of the minor in Kansas while she was looking for a job, because she had no means of support and wanted the child to have a stable environment while she moved around looking for employment. Then appellant’s mother, the grandmother, took custody of the child. According to the grandmother, the child had emotional problems at that time because of the feeling that no one wanted him. Appellant was going to give up the child for adoption to her brother, but he did not want the child. According to the grandmother, appellant was then living with a woman in Kansas City and was not interested in caring for the minor.
 
 [2]
 

 There was ample evidence that the minor had achieved a happy and well-adjusted life living with the grandmother for nearly seven years. He was an excellent student doing well in school. He was very involved in church activities for his age group. He was active in Boy Scouts, Junior Olympics, Little League, and Community Theater. The minor had a good relationship with his grandmother and had entered her in the local mother of the year contest. Upon examination of the minor, his past history and current situation, it was the opinion of Dr. E. C. Francisco, a child psychiatrist and superintendent of the Nevada, Missouri, state hospital, “that it will be definitely detrimental to his mental health and his over all stability if he will be taken from the present care and custody of his grandmother, Effie Volkland.”
 

 Appellant has been employed by the County of Los Angeles since 1972, first as a teacher’s aide, then as a teacher, at McLaren Hall, the Los Angeles County facility for neglected and abused children. Her income the first two years was $500 a month, but as a teacher she now earns $14,000 to $15,000 a year. Her husband had recently received a master’s degree in political science and intended to attend law school. He earned money as a church organist and as a supermarket employee. When asked by the court why she did not send for the minor when she first got married, appellant testified that she did, but that the grandmother would not bring the child. According to appellant, she had requested the child’s return in January or February 1975, but the grandmother had replied that it would be over her dead body. The grandmother, on the other
 
 *678
 
 hand, indicated that appellant had failed to respond to her offer to spend Christmas vacation together and appellant did not send the minor a Christmas present. Appellant had been sending money, however, for the child’s tuition in private school, which was $100 to $300 per year.
 

 The trial court interviewed the minor in chambers.
 
 [3]
 
 The grandmother submitted an affidavit signed by the minor which indicated he wanted to stay with her.
 
 [4]
 

 Discussion
 

 Appellant contends (1) that the evidence is insufficient to support the trial court’s orders; (2) that the trial judge used erroneous reasoning and failed to apply the proper standard; and (3) that the court erred in considering certain additional evidence on appellant’s motion for reconsideration.
 

 In reviewing the sufficiency of the evidence to support the trial court’s orders, we must of course view the evidence in the light most favorable to the respondent.
 
 (In re
 
 D.
 
 L. C.,
 
 54 Cal.App.3d 840, 843-844
 
 *679
 
 [126 Cal.Rptr. 863].) The determination by the trial court of the issue of custody is within its discretion, and must be upheld if there is substantial evidence to support it.
 
 (In re B. G.,
 
 11 Cal.3d 679, 699 [114 Cal.Rptr. 444, 523 P.2d 244].) In exercising its discretion, the court must of course be guided by relevant principles of law.
 

 In
 
 In re B. G., supra,
 
 the Supreme Court held that in any proceeding involving the custody of a child, Civil Code section 4600 requires that custody may be awarded to a nonparent over a parent only after a finding that an award of custody to the parent would be detrimental to the child and that the award to the nonparent is required to serve the best interests of the child.
 
 (Id.,
 
 at pp. 694-695, 698-699.) This requires “a clear showing that such award is essential to avert harm to the child. A finding that such an award will promote the ‘best interests’ or the ‘welfare’ of the child will not suffice.”
 
 (Id.,
 
 at p. 699; fn. omitted. See also
 
 Guardianship of Marino,
 
 30 Cal.App.3d 952, 959 [106 Cal.Rptr. 655];
 
 In re Robert P.,
 
 61 Cal.App.3d 310, 319 [132 Cal.Rptr. 5].)
 

 The trial court in this case did find that an award of custody to the grandmother would be in the best interests of the child and that an award to appellant would be detrimental to the child.
 

 Appellant contends that in light of the preference in the law for parental custody (see
 
 In re B. G., supra
 
 at pp. 693-695, 696-698) the evidence does not support the finding that an award of custody to appellant would be detrimental to the minor. Appellant emphasizes that “[a]t the time of the subject hearing, the mother was gainfully employed, happily married, and in the court’s own words, ‘both homes would be physically satisfactory ....’” Assuming that appellant is now able and willing to provide a proper home for the child, the court was nevertheless entitled to rely upon the other circumstances in the case from which it could reasonably conclude there was a clear showing that an award of custody to appellant would be detrimental. The minor had lived exclusively with the grandmother in Nevada, Missouri, for almost seven years of his life, important formative years between the ages of four and eleven. That was the only home the child knew, and the grandmother was the de facto parent for that long period of time. (See
 
 In re B. G., supra
 
 at p. 692 & fn. 18.) As the court pointed out, the child had developed his roots in his grandmother’s home and community. He had adjusted to school, church, and community activities there. The trial court was justified on this record in determining that “the boy would suffer a trauma after spending his seven years between four and eleven
 
 *680
 
 with the only person he has known as a mother” and that “it would be detrimental to the boy to uproot him from his home, his atmosphere, his friends, his school and his loving grandmother ....” This conclusion was also supported by the opinion of a psychiatrist who examined the minor.
 

 The court further emphasized that there had been very little contact between the minor and appellant during those seven years. Even appellant testified she only saw the minor twice a year after she moved back to California. The minor did not know appellant’s husband. The trial court had the opportunity to observe the parties and to evaluate the depth of feeling each had toward the minor. The court also interviewed the minor himself. Although the court indicated.that the minor in that conversation “refused to make a choice,” this does not mean the court could not infer the child’s wishes and feelings from the conversation. (See
 
 Chaffin
 
 v.
 
 Frye,
 
 45 Cal.App.3d 39, 46 [119 Cal.Rptr. 22].)
 

 The trial court’s conclusion that it would be detrimental to the child to uproot him from the environment and de facto parent he has known for almost seven years and to award custody to a parent with whom the minor has had very little contact, is supported by numerous authorities. (See
 
 Adoption of Michelle T.,
 
 44 Cal.App.3d 699, 706-707 [117 Cal.Rptr. 856];
 
 In re D. L. C., supra,
 
 54 Cal.App.3d 840, 849;
 
 In re Reyna,
 
 55 Cal.App.3d 288, 302 [126 Cal.Rptr. 138];
 
 Chaffin
 
 v.
 
 Frye, supra,
 
 45 Cal.App.3d 39, 46.) We conclude no abuse of discretion has been shown and that the evidence supports the trial court’s order.
 

 Appellant next selects from the record isolated remarks of the court and argues that the court failed to take into account the law’s preference for parental custody. In
 
 In re B. G., supra,
 
 11 Cal.3d 679, 699, the trial court failed to make a finding that an award of custody to the mother would be detrimental. The trial court in that case erroneously reasoned “that it could weigh the advantages and disadvantages of an award to the mother and to the foster parents, and that a slight tipping of the scales in favor of an award to the foster parents would justify the denial to the mother of the custody of her children.” Contraiy to appellant’s contention, no such error occurred in this case. The trial court was made aware of
 
 In re B. G.
 
 in points and authorities submitted to it, and the court expressly made a finding of detriment. Although appellant contends
 
 B. G.
 
 was not cited to the court until appellant’s motion for reconsideration, the record does not support that assertion. In the points and authorities submitted in opposition to appellant’s motion for reconsideration, it was pointed out that
 
 In re B. G.
 
 was cited in a trial brief. Furthermore, the
 
 *681
 
 arguments by counsel are not included in the reporter’s transcript and could well have made clear the controlling law. Although the trial court did not enter the formal finding of detriment until its order on the motion for reconsideration, the court stated that this was due to mere inadvertence, and that at all times the court had in mind that an award to appellant would be detrimental to the minor. (See
 
 Guardianship of Marino, supra,
 
 30 Cal.App.3d 952, 960;
 
 Chaffin
 
 v.
 
 Frye, supra,
 
 45 Cal.App.3d 39, 44-45.) Finally, even assuming the trial court made the required finding only after being informed on motion for reconsideration that it had previously been omitted, with the entire record before us the court’s finding at the latter time is clearly sufficient to support the judgment on appeal. (Cf.
 
 In re Randy B., 62
 
 Cal.App.3d 89, 96 [132 Cal.Rptr. 720].)
 

 Appellant isolates various remarks by the court indicating that it thought both homes would be satisfactory and that it was a close case. In light of the court’s express finding at the close of the case that an award of custody to appellant would be detrimental to the minor, the court’s other remarks are not persuasive that the court applied an improper standard or failed to take into account the parental preference doctrine.
 

 Finally, appellant contends the court erred in considering certain evidence on appellant’s motion for reconsideration. At the hearing of July 13, 1976, the court announced its award of custody to the grandmother. Appellant thereafter filed a nonstatutory “motion for reconsideration,” arguing primarily that the court had not made the finding of detriment required by
 
 In re B. G.,
 
 but also submitting an additional declaration by a long-time friend attesting to appellant’s good moral character and fitness as a mother. In opposition to the motion for reconsideration, respondent argued the trial court had previously considered the issue of detriment, and also submitted additional affidavits and declarations, including the handwritten affidavit of the minor and the psychiatric opinion.
 
 [5]
 

 Hearing on appellant’s motion for reconsideration was September 8, 1976. The court thoroughly reviewed the evidence, commented that through inadvertence it had failed to make the finding of detriment at the prior hearing but had it in mind at that time, and the court amended the prior order to provide the finding of detriment.
 

 
 *682
 
 In the course of these comments, the court mentioned the handwritten affidavit of the minor, and appellant’s counsel stated, “May I just comment, your Honor, that do you note the document was filed after the hearing and not admitted in evidence at the hearing?” Appellant argues that on the motion for reconsideration the trial court could not consider any of the additional declarations. The' authorities cited by appellant do not support this assertion.
 
 [6]
 
 Technically there is no authority in the code for a “motion for reconsideration.”
 
 (San Francisco Lathing, Inc.
 
 v.
 
 Superior Court, supra; Farrar
 
 v.
 
 McCormick,
 
 25 Cal.App.3d 701, 705 [102 Cal.Rptr. 190].) Appellant is hardly in a position to complain if the court considered additional declarations submitted by respondent, since appellant herself included additional evidence in support of her motion. In fact, arguably the court granted appellant’s request to “reconsider” the matter, although it came to the same result upon reconsideration. We perceive no reversible error.
 
 [7]
 

 The orders appealed from are affirmed.
 

 Kaus, P. J., and Stephens, J., concurred.
 

 A petition for a rehearing was denied December 1, 1977, and appellant’s petition for a hearing by the Supreme Court was denied January 5, 1978. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.
 

 [1]
 

 The father did not marry appellant and he is not a party in these proceedings.
 

 [2]
 

 There was some evidence, denied by appellant, that appellant had engaged in homosexual activities in 1968 and 1969.
 

 [3]
 

 That discussion is not reported; however, the trial court later commented that “[t]he Court did interview the boy. The boy was smarter than I thought he was. He refused to make a choice which is a normal thing for a child.”
 

 [4]
 

 The handwritten affidavit by the minor stated: “1. In Nevada everybody is my friend, in California I knew under ten people. “2. I love Nevada I have considered this town my home for seven years. “3. I love my troop 42, of the Methodist Church, Mr. Burrel is really with you—all of the time. “4. I can visit my best friend, Chris Stephens nearly every day, in California, I couldn’t go out of the front yard in fear my Grandmother would see me. “5. Spice is my pet dog she is very precious to me. Noooo other dog,
 
 could take her placel
 
 “6. I liked the school I went to, Saint Mary’s, Catholic school I loved it, no school out there like it. “7. I am taking French Horn Lessons, to play in the band next year, to show all, Nevada is my home. “8. Nevada is clean, sweet beautiful, Long Beach is dirty, boring, and ugly. “9. I love Nevada. I don’t love Long Beach. “10. NEVADA IS MY HOME I INTEND TO STAY THERE. “11. Nevada is an Ideal place for a child doesn’t it sound better than a street corner? “12. If Grandmother wanted me—she would not take me from school. “13. PLEASE LET ME LIVE WITH MY GRANDMOTHER. “14. In California I could not eat meat. “15. I couldn’t watch T.V. either. “16. I love my Grandmother. [signed] Dietrich Volkland 8/3/76” (Emphasis in original.)
 

 [5]
 

 Apparently the minor was already back in the custody of the grandmother pursuant to the July 13 order.
 

 [6]
 

 San Francisco Lathing, Inc.
 
 v.
 
 Superior Court,
 
 271 Cal.App.2d 78, 81 [76 Cal.Rptr. 304];
 
 City & Countv of S.F.
 
 v.
 
 Muller, 177
 
 Cal.App.2d 600, 603 [2 Cal.Rptr. 383];
 
 Harth
 
 v.
 
 Ten Eyck,
 
 16 Cal.2d 829, 833 [108 P.2d 675].
 

 [7]
 

 The notice of appeal states that the appeal is from both of the trial court’s orders. On the authority of
 
 Farrar
 
 v.
 
 McCormick, supra
 
 at page 707, we assume both orders are appealable and affirm them.